# IN THE COURT OF APPEALS OF IOWA

No. 19-0901
Filed September 11, 2019

**IN THE INTEREST OF N.R.,**
**Minor Child,**

**B.P., Mother,**
　　Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour,

District Associate Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

Susan R. Stockdale, West Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee State.

Magdalena B. Reese, Des Moines, guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**BOWER, Judge.**

A mother appeals the juvenile court order terminating her parental rights. She claims the child could have been returned to her care at the time of the hearing and, alternatively, requests an additional six months to reunite with the child. We affirm.

We review termination-of-parental-rights cases de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). "There must be clear and convincing evidence of the grounds for termination of parental rights." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). There is clear and convincing evidence where there are "no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (citation omitted). The paramount concern in termination proceedings is the best interest of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

B.P. is the mother of N.R., born in 2014. S.R. is the mother's long-time paramour and biological father of N.R.; J.U., the mother's husband, is the legal father of the child. J.U. has not been a part of the child's life and did not participate at any point in the proceedings. The mother's rights to two other children were terminated in 2010, due in part to substance-abuse problems.

In December 2017, the mother was reported to the Iowa Department of Human Services (DHS) for using methamphetamine. The child had been staying with the paternal grandmother since July due to the parents' lack of housing. In January 2018, the mother consented to the removal of the child when her drug use resulted in the revocation of her probation and incarceration. The child was

adjudicated a child in need of assistance (CINA) on March 23.  In April, the child was placed in a paternal uncle's home.

The mother has a twenty-year history of methamphetamine use, with a sober period of several years including the time period when she was pregnant with the child.  She admitted to relapsing in early 2017.  Despite the removal of the child and revocation of her probation in the beginning of 2018, the mother did not seek treatment until May 31, when she entered an inpatient treatment program following three months in jail.   She struggled with the schedule and rules of the residential program and left in July.  She successfully continued her treatment on an outpatient basis; at the time of termination the mother had been sober for nearly one year.  However, the juvenile court noted she was living with the biological father, with whom she had used drugs in the past.  Both parents were members of a Facebook group depicting drug use, which they claimed was motivation to stay sober.

The mother did not reliably attend visitation until she entered treatment. Visitation remained supervised through the termination hearing, in part due to the parents' defensiveness and raised voices in response to any changes or information requests.  The mother did not consistently call the child to maintain contact outside visitation hours.  When the child was hospitalized three days in September 2018 for surgery, the mother only visited when the father was available to visit—during the surgery itself and approximately one hour of the following two days while the child was in recovery.  She did not follow through with additional supervised time offered by the child's guardian and turned down the chance to spend Christmas with the child at the guardian's home.

The child began individual therapy in mid-June; the child's therapist also conducted family sessions with the parents and child. The child was diagnosed with an adjustment disorder with anxiety. The therapist and DHS recommended individual therapy for the parents, but they did not consistently comply with the recommendation until November.[1] In addition to the child's and family therapy, the parents began couple's therapy to develop their relationship and parenting abilities. The mother attended mental-health sessions while in substance-abuse treatment. The child's therapist was concerned by family therapy incidents where the father would raise his voice towards the mother and neither parent noticed negative reaction behaviors from the child. The parents have not addressed past domestic-violence issues in their therapy.

The father engaged in inappropriate sexual behaviors in late 2018 via Facebook and was accused of having sent disturbing sexual messages to his niece. The mother either did not believe or otherwise showed little concern about the accusations.

A psychological evaluation diagnosed the mother with borderline intellectual functioning. The report noted her trauma history and found she possesses an insufficient ability to appreciate dangers and an inability to engage in problem solving. The psychologist recommended the mother participate in intensive services and skills-oriented therapy to address her underlying problems and develop her behavioral and problem-solving skills.

---

[1] Some therapy delays were due to changes in insurance coverage.

At the termination hearing on March 14, 2019, the child's therapist opined the parents were not interested in working on their parenting skills and were uninvolved in the child's therapy. With respect to the mother, the therapist said, "[The mother] rarely responded to anything." The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(f) and (g) (2019). The mother appeals.[2]

"[W]e may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *D.W.*, 791 N.W.2d at 707. After reviewing the record, we find grounds for termination exist under section 232.116(1)(f).

Pursuant to section 232.116(1)(f), the court may order termination of a parent's rights to a child when (1) the child is four years of age or older, (2) the child has been adjudicated CINA, (3) the child has been removed from the parent's custody for at least twelve consecutive months, and (4) clear and convincing evidence shows the child cannot be returned home at present. The mother only contests the court's finding the child could not be returned to her custody either at the time of the hearing or within six months.

The mother had recently begun consistent mental-health therapy for her underlying issues. She has not consistently participated in the child's therapy or demonstrated an understanding of how her behaviors could affect the child. The mother's actions—not attending extra visitations without the father, choosing to spend holidays away from the child instead of spending time at the guardians'

---

[2] The biological father's appeal was dismissed because it was filed late, depriving the court of jurisdiction to consider the appeal.

home, and supporting the father when his sexual behaviors presented an obstacle to reunification with the child—show her paramour is more important to her than the child. The mother has not demonstrated any ability to live alone, depending on the father for her housing and transportation needs. We find the child could not be returned to the mother's home at the time of the trial.

The mother also maintains she should be allowed additional time to work toward reunification. When granting additional time, the court must "enumerate the specific factors, conditions, or expected behavioral changes" the court believes will occur so the need of removal will no longer exist at the end of the additional six months. Iowa Code § 232.104(2)(b). The juvenile court found, "Based on mother and father's individual history, there is little evidence that their behaviors will change." In particular, the parents' lack of insight in the consequences of their actions and failure to fully participate in therapy until just prior to the permanency hearing troubled the court. The court also noted each parent had prior opportunities to engage in services relating to their other children and chose not to do so. Based on this record, we find a six-month extension unwarranted.

The mother argues the child's need for permanency is insufficient to find the child's best interests include termination of her rights. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.,* 778 N.W.2d 33, 41 (Iowa 2010). Instead, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa

Code § 232.116(2). The mother has only begun mental-health treatment to deal with decades of drug abuse and mental-health traumas. The paternal uncle's family seeks to adopt the child and has made the child's needs a priority, including necessary medical care, therapy, and incorporating the child into their family. We find terminating the mother's parental rights is in the child's best interest.

**AFFIRMED.**